IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Peter J. Rowe, | C/A No.: 3:12-cv-01201-JFA |
| Plaintiff, | |
| vs. | **ORDER ON MOTION TO DISMISS** |
| Stephen K. Benjamin, Larry Knightner, Jacqueline Roundtree, and Bernie Mazyck, | |
| Defendants. | |

This matter comes before the Court on defendant Stephen K. Benjamin's motion to dismiss under Rule 12(b)(6). (ECF No. 9). The Court has reviewed the record and the memoranda of counsel and considered the arguments presented at a hearing held on September 4, 2012. For the reasons set forth below, the defendant's motion to dismiss is granted.

## I.  FACTUAL AND PROCEDURAL HISTORY

The following facts set forth in the complaint are taken as true for the purpose of this motion. Plaintiff Peter J. Rowe worked as the Director of Community Planning and Development in the Columbia Field Office of the United States Department of Housing and Urban Development (HUD) between December of 2010 and November of 2011. His job involved administering approximately $170 million in HUD funds dispersed through various community planning and development programs in South Carolina. In the course of his employment, however, Rowe identified waste, possible misappropriation, and abuse of the federal funds disbursed to the City of Columbia (the City). Rowe repeatedly brought these irregularities to the attention of appropriate HUD employees, including defendant Larry Knightner, the Director of the Columbia Field Office, and defendant Jacqueline Roundtree, the Director in Chief of Labor Relations at HUD. According to Rowe, HUD employees did nothing

to address his concerns and in fact implied that he should terminate his investigation into the City. Rowe further sought a forensic audit of HUD funds disbursed to the City, also to no avail.

In one particular incident, "[i]n his job as the Director of Community Planning and Development," Rowe determined that certain HUD funds allocated to a project known as "The Village at River's Edge" (River's Edge project) were unaccounted for or were the subject of an investigation. Defendant Benjamin, the elected mayor of the City, was an investor and initial developer of this project. In April of 2011, defendant Knightner indicated to Rowe that Knightner had received a call asking why Rowe was "picking on Columbia's first minority mayor." Knightner threatened that Rowe should "lay off Columbia or else," indicating that he was passing on the threat "from a high level official with the City of Columbia." Rowe alleges that this high level official was Benjamin. Also, both defendant Roundtree and defendant Mazyck, the President of the South Carolina Association of Community Development Corporations, threatened Rowe's employment and family after this incident.

At about the same time, HUD determined that a large sum disbursed to the City for a Community Development Block Grant (CDBG) had not been spent in a timely fashion, and as a result HUD indicated that it would reduce future funding as a penalty. The City and defendant Benjamin argued to HUD that the failure to timely spend funds was beyond the City's control and could not have been prevented, but Rowe stated in a letter to HUD that the opposite was true. Rowe detailed additional irregularities in the use of HUD funding in this letter. The threat of losing funding prompted Benjamin and other City officials to travel to Washington, D.C. to confer with HUD in an attempt to stop the reduction. Rowe participated in the conference by telephone and heard Benjamin inform HUD that the City had in fact planned to spend the large sum on the River's Edge project. Rowe believed this to be inappropriate because other, previously disbursed HUD funds were allocated for this project.

In addition to voicing his concerns to HUD employees, Rowe states that he complained to others outside his "jurisdiction," including to City employees and to the public. For example, Rowe notified the City that federal CDBG funds were being used improperly to pay internal salaries of City Community Development staff. Also, at "public speaking engagements," Rowe told attendees that certain missing and potentially misappropriated funds may deprive needy citizens of affordable housing. Moreover, Rowe held "numerous conversations with third parties including private citizens and high level state employees" regarding his concerns.

In November of 2011, HUD terminated Rowe's employment, ostensibly based on "disrespectful and confrontational" behavior toward members of his staff and on alleged threats made to a subordinate. However, Rowe alleges that this basis was a pretext for the real motivation behind his firing: to halt his investigation and silence his exposure of waste and potential misappropriation of HUD funds administered within the City. Rowe claims that because of Rowe's internal and external efforts to uncover and document waste with regard to HUD funds disbursed to the City, defendant Benjamin conspired with the other defendants to have Rowe terminated from his employment with HUD in violation of his First Amendment rights.

Rowe filed a complaint in this Court on May 4, 2012, originally asserting claims for civil conspiracy and violation of his First Amendment rights against Defendants Benjamin, Knightner, and Roundtree. Rowe also asserted a claim of civil conspiracy against Defendant Mazyck. Each of the defendants filed motions to dismiss, and the parties stipulated to the dismissal with prejudice of Rowe's claims against defendants Knightner, Roundtree, and Mazyck. (*See* ECF Nos. 21, 23). Further, the parties stipulated to the dismissal with prejudice of Rowe's civil conspiracy claim against Benjamin. (ECF No. 27). Therefore, the sole remaining issue is whether Rowe's First Amendment claim against Benjamin may proceed.

In his motion to dismiss, Benjamin advances two primary arguments as to why the Court should reject Rowe's claim.[1]  First, Benjamin asserts that Rowe has not pleaded facts sufficient to show an actionable First Amendment claim.  Further, Benjamin is a public official—the elected mayor of the City.  Thus, in a second argument, Benjamin asserts that he is entitled to qualified immunity.

The Court held a hearing on Benjamin's motion to dismiss on September 4, 2012.  Two important issues argued at this hearing were the viability of Rowe's First Amendment claim in light of the United States Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and whether defendant Benjamin is entitled to qualified immunity as a public official.  Following the hearing, the Court directed the parties to submit supplemental briefing on *Garcetti*'s applicability to the allegations of the instant case, including the significance of the fact that defendant Benjamin is not alleged to have been plaintiff's employer.  The parties also briefed the question of qualified immunity in light of this fact.  (*See* ECF No. 29).

## II.  LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), courts must accept as true the facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).  The United States Supreme Court has stated, however, that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[1] Rowe asserts his First Amendment claim against Benjamin under 42 U.S.C. § 1983, which creates a cause of action against any person who, acting "under color of" state law, abridges rights created by the Constitution and laws of the United States.  In this regard, Benjamin also asserts that Rowe failed to plead facts sufficient to show that Benjamin acted under color of state law.  Because Rowe's claim is disposed of on other grounds, however, it is unnecessary for the Court to address this argument.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiff must put forth claims that cross "the line from conceivable to plausible." *Id.* at 1950–51 (internal quotation marks omitted).

## III. DISCUSSION

As a general matter, it is well settled that for a public employee to state a claim for First Amendment retaliation, the employee must show both that his or her speech is protected under the First Amendment and that the government's restriction of the speech is justified. The Supreme Court recently summarized the Court's precedent in this regard in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), noting that two inquiries "guide interpretation of the constitutional protections accorded to public employee speech." *Id.* at 418. In particular, the "first requires determining whether the employee spoke *as a citizen* on a matter of public concern." *Id.* (emphasis added). If a court answers this inquiry in the negative, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* However, "[i]f the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*

*Garcetti* considered the question "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." *Id.* at 413. The Supreme Court recognized that "public employees do not surrender all their First

Amendment rights by reason of their employment" and that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 417. Still, the Court noted that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* at 418. In other words, it is important to both "promote the individual and societal interests that are served when employees speak as citizens on matters of public concern" and "respect the needs of government employers attempting to perform their important public functions." *Id.* at 420. In light of these considerations, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

Thus, *Garcetti* appears to have clarified the first inquiry set forth above. Specifically, if the employee speech at issue is made as part of the employee's job, the employee is not speaking as a citizen and the speech is not protected. Although Rowe originally disputed that his speech was made pursuant to his official duties, in his supplemental memorandum on Benjamin's motion to dismiss, Rowe now acknowledges this to have been the case. (*See* ECF No. 32, at p. 5–6, 8–10). As such, the *Garcetti* holding would appear to readily dispose of Rowe's First Amendment retaliation claim because Rowe was not speaking as a citizen, but rather as a public employee. Undeterred, Rowe contends that *Garcetti* does not apply to his case because Benjamin was not his employer. Said another way, Rowe argues that *Garcetti* does not apply to cases where a public employee plaintiff alleges that a *non-employer* defendant has retaliated against the plaintiff in violation of the plaintiff's First Amendment rights.

Rowe cites several cases from outside of the Fourth Circuit as support for his position. *See Leverington v. City of Colorado Springs*, 643 F.3d 719, 728–32 (10th Cir. 2011); *Fairley v.*

*Andrews*, 578 F.3d 518, 524 (7th Cir. 2009); *Stokes v. City of Mount Vernon*, 2012 WL 3536461, at *6–*7 (S.D.N.Y. Aug. 14, 2012); *Leavey v. City of Detroit*, 719 F. Supp. 2d 804, 812–13 (E.D. Mich. 2010), *aff'd* 467 Fed. App'x 420 (6th Cir. 2012) (unpublished); *Lewis v. Mills*, 2009 WL 3669745, at *3–*5 (C.D. Ill. Nov. 3, 2009).  Generally speaking, these courts have distinguished or questioned the applicability of *Garcetti* in cases involving non-employer defendants by pointing out that the reasoning in *Garcetti* focuses only on "the justification of a particular defendant: the government employer" in curtailing speech and that the acts of non-employer defendants may not have the same justification.  *Fairley*, 578 F.3d at 524.  Thus, for example, the Seventh Circuit noted that "it is conceivable that the Court might hold the same speech 'not protected' vis-à-vis the employer, but 'protected' vis-à-vis co-workers."  *Id.*

Indeed, the cases Rowe cites argue that extending *Garcetti*'s holding to bar retaliation claims against non-employer third parties risks giving "such a third party an impermissible veto over the employer's personnel or contractual decisions."  *Leverington*, 643 F.3d at 729; *see also Fairley*, 578 F.3d at 524 (noting that if the "plaintiffs' speech is categorically not protected, any state actor can punish plaintiffs in any way he wishes without incurring liability under the first amendment").  Thus, as one court recognized, "the government's needs *as an employer* should not insulate the actions of state actors who do not have an employment relationship with a public employee asserting a First Amendment violation."  *Lewis*, 2009 WL 3669745, at *5.

Even if this employer/non-employer distinction is a viable one, however, it is far from clear that these cases provide Rowe with a cause of action.  The only two appellate decisions which discuss the issue are arguably distinguishable from the instant case.  In *Leverington*, for example, the speech at issue did not fall within the context of the plaintiff's job duties.  Rather, the plaintiff was a cardiac nurse for a public hospital, and the speech for which she was allegedly fired arose from an encounter with a police officer at a traffic stop.  *Leverington*, 643 F.3d at

722. Further, in *Fairley*, although the speech was within the context of the plaintiffs' job duties, the Seventh Circuit reserved judgment as to whether *Garcetti* applied to bar the claims against the non-employer defendants. *Fairley*, 578 F.3d at 524.

Only the three district court opinions mentioned above found *Garcetti* inapplicable in cases involving speech made in the course of the plaintiff's job duties. *See Stokes*, 2012 WL 3536461, at *7; *Leavey*, 719 F. Supp. 2d at 812; *Lewis*, 2009 WL 3669745, at *5. Moreover, in an unpublished decision on appeal in one of these cases, the Sixth Circuit Court of Appeals appeared to decide the case under *Garcetti*, making no mention of the district court's employer/non-employer distinction. *Leavey v. City of Detroit*, 467 Fed. App'x 420 (6th Cir. 2012). In particular, in affirming the denial of the plaintiff's First Amendment claims, the court of appeals discussed *Garcetti* and noted that even if the plaintiff's speech was on a matter of public concern, the plaintiff spoke as an employee and "not as a concerned citizen." *Id.* at 427–29. This provided an independent basis for denying constitutional protection to plaintiff's speech. *Id.* at 429. Thus, these nonbinding authorities provide only limited support for Rowe's claim.

Additionally, and apparently contrary to Rowe's position, an earlier Sixth Circuit opinion has applied *Garcetti* to bar a plaintiff's First Amendment retaliation claim against a non-employer defendant. *See Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007). In this case, a former park ranger sued the county park district and various individual defendants, including a third party consultant, for retaliation based on comments she made to the consultant during a departmental evaluation. *Id.* at 539–40. In reviewing the district court's dismissal of the plaintiff's complaint, the Sixth Circuit emphasized that in order "for a government employee's speech to warrant First Amendment protection, the Supreme Court's *Connick and Pickering* decisions have long imposed the threshold requirements that the employee (1) must

have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern.'" *Id.* at 542. Then, because the plaintiff did not speak as a citizen within the meaning of *Garcetti* during her comments to the consultant, *id.* at 543, the court found that the district court properly dismissed her complaint, *id.* at 546.

Notably, in doing so, the court rejected a distinction similar to the one Rowe proposes here—i.e., that the plaintiff's speech arose in the context of "addressing inquiries of a third party consultant hired by her employer." *Id.* at 545. The court explained that "the determinative factor [is] not where the person to whom the employee communicated fit within the employer's chain of command, but rather whether the employee communicated pursuant to his or her official duties." *Id.* Acknowledging that "taking action against a public employee for speech made pursuant to official duties might give rise to antidiscrimination, whistleblower, or labor-contract claims," the court affirmed that doing so "does not violate the First Amendment." *Id.* at 546. It likewise makes no difference that the speech is on a matter of public concern. *Id.* at 546–47.

Furthermore, although the Fourth Circuit does not appear to have squarely addressed this issue, the court of appeals has suggested in dicta that a public employee plaintiff's First Amendment retaliation claim against a non-employer defendant would fail if the plaintiff's speech was in the course of her job duties. *Campbell v. Galloway*, 483 F.3d 258 (4th Cir. 2007). In *Campbell*, a female police officer sued both employer and non-employer defendants (including the chief of police and a fellow officer, respectively) alleging in part that they retaliated against her for filing sexual harassment complaints. *Id.* at 265. In determining whether the plaintiff had demonstrated a violation of her First Amendment rights, the court of appeals cited *Garcetti* and noted that "speech made by a public employee pursuant to the employee's official duties is not protected by the First Amendment." *Id.* at 266 n.3. However, *Garcetti* was decided after the trial court proceedings concluded, and the defendants did not

argue that the plaintiff's speech was pursuant to her employment duties on appeal. *Id.* Because the court of appeals also found that the defendants were entitled to qualified immunity on this claim, remand for factual development was unnecessary. *Id.*

Importantly, though, the Fourth Circuit stated that "a determination that her speech was pursuant to official duties would simply provide an additional basis for rejecting Campbell's First Amendment claims" against both defendants. *Id.* In other words, in finding that she would not be able to state a claim for retaliation based on speech made in the course of her job duties, the opinion did not draw a distinction between the employer and non-employer defendants. Still, it was not necessary to decide the issue, *id.*, and it is not clear how the Fourth Circuit would rule in another case with similar facts.

In sum, the law is at best unsettled as to whether a public employee plaintiff may bring a First Amendment retaliation claim against a non-employer defendant for speech made pursuant to the employee's job duties. Importantly, though, it is not necessary for the Court to resolve this conflict and determine whether the facts alleged in this case make out a violation of a constitutional right. The above discussion makes plain that the First Amendment right Rowe asserts, if it even exists, cannot have been clearly established at the time of the statements at issue.

In this regard, the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts considering whether to dismiss a complaint based on qualified immunity should consider both "whether the facts that a plaintiff have alleged . . . make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged

misconduct." *Id.* at 232 (citations omitted). Notably, courts considering this issue may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236. A right is clearly established if "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Based on the above, the Court finds that it was not clearly established that Rowe was engaging in constitutionally protected activity at the time of the statements at issue. As a result, Benjamin is entitled to qualified immunity.

## IV. CONCLUSION

Rowe's speech in this case—speech critical of governmental waste and abuse of public funds—lies at the core of the First Amendment and thus is undoubtedly speech of public concern. However, Rowe acknowledges that he made this speech pursuant to his official duties as the Director of Community Planning and Development in the Columbia Field Office of HUD. Although the Supreme Court in *Garcetti* recognized that speech "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance," it nevertheless rejected "the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties." *Garcetti*, 547 U.S. at 425–26.

Rowe argues that the Supreme Court did not intend for *Garcetti*'s holding to bar First Amendment retaliation claims against non-employer defendants, even where the plaintiff made the speech at issue pursuant to his or her job duties. Although he might be correct, as some courts outside the Fourth Circuit have held, the law is far from clear on this point. Indeed, the Fourth Circuit in *Campbell* suggested that *Garcetti* would bar such a claim. Thus, it is this Court's opinion that even if such a free speech right exists, it was not clearly established at the

time of the misconduct alleged in this case. Consequently, Benjamin is entitled to qualified immunity.

Benjamin's Motion to Dismiss is hereby granted, and this case is dismissed without prejudice.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

October 26, 2012                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                    United States District Judge